NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-2299

_____

NATIONAL LABOR RELATIONS BOARD,
                                                    Petitioner

v.

REGENCY GRANDE NURSING &
        REHABILITATION CENTER,
                                                    Respondent

_____

1199 SEIU United Healthcare Workers East, New Jersey Region,
Intervenor (Pursuant to the Court's Order of 8/18/11)

_____

On Petition for Review and Application for Enforcement
of a Decision and Order of the National Labor Relations Board
(NLRB-1: 22-CA-29318)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2012

Before:  SLOVITER, VANASKIE, *Circuit Judges*, and
                POLLAK,* *District Judge*

(Filed: February 14, 2012)

_____

OPINION

_____

_____

* The Honorable Louis H. Pollak, Senior Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SLOVITER, *Circuit Judge*.

Regency Grande Nursing and Rehabilitation Center ("Regency" or "the Employer") is a New Jersey corporation that operates four nursing home and rehabilitation centers in the state, including one such facility in Dover, New Jersey. Regency has refused to bargain with 1199 Service Employees International Union United Healthcare Workers East ("1199 SEIU") as the duly elected collective bargaining representative of a unit of its employees[1] in an effort to challenge the validity of its certification. The National Labor Relations Board ("NLRB" or "the Board") filed an application to enforce the Board's Decision and Order issued on April 28, 2011, in which the Board found that Regency violated Section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA" or "the Act") by its refusal to bargain. 29 U.S.C. §§ 151, 158(a)(5) and (1). For the reasons that follow, we will enforce the order of the Board.[2]

---

[1] That unit includes "All full-time and regular part time licensed practical nurses, certified nursing assistants, housekeeping employees, dietary employees, cooks, laundry aides, recreation aides, nurses aides, and maintenance employees working at the Employer's 65 North Sussex Street, Dover, New Jersey facility EXCLUDING registered nurses, all other professional employees, office clerical employees, guards and supervisors as defined in the [National Labor Relations] Act." App. at 95. This unit is referred to as "the employees" in this opinion.

[2] The Board had subject matter jurisdiction to issue the Decision and Order under Section 10(a) of the Act. 29 U.S.C. § 160(a). This court has jurisdiction under Section 10(e) and (f) of the Act. Because the Board's Decision and Order is based, in part, on findings made in an underlying representation proceeding in which Regency contested the Board's certification of 1199 SEIU as the employees' exclusive bargaining representative, the record in that proceeding is also before this court. 29 U.S.C. § 159(d).

2

# I.

## Background

These parties have been together before this court on three occasions over the past four years, and on all three occasions we enforced the Board order. *See NLRB v. Regency Grand* [sic] *Nursing & Rehab. Ctr.*, 265 F. App'x 74 (3d Cir. 2008) ("*Regency I*"); *NLRB v. Regency Grande Nursing & Rehab. Ctr.*, No. 10-3547, 2011 WL 3488995 (3d Cir. Aug. 10, 2011) ("*Regency II*"); *NLRB v. Regency Grande Nursing & Rehab. Ctr.*, 441 F. App'x 948 (3d Cir. 2011) ("*Regency III*"). Because we write primarily for the parties who are familiar with this history, we recount only the facts essential to our decision.

After this court enforced a Board order finding that the Employer had violated the NLRA by recognizing and entering into an agreement with a minority union (Local 300S), *see Regency I*, 265 F. App'x at 75, both Local 300S and 1199 SEIU filed petitions with the Board seeking to represent the employees at the Dover facility. At a representation election, fifty-three ballots were cast for 1199 SEIU, twenty-eight ballots were cast for Local 300S, and four ballots were cast against participating labor organizations. One ballot was deemed void and forty-three ballots were challenged, including twelve challenges by the Board's agent because the names of the individuals did not appear on the voter eligibility list, nineteen challenges by 1199 SEIU on the ground that the individuals were not members of the collective bargaining unit, and one challenge by the Employer on the ground that the individual was no longer its employee

3

on the date of the election.

Both 1199 SEIU and the Employer also filed objections to the conduct of the election.[3] 1199 SEIU objected on the grounds that the Employer "purportedly employed and included on the Excelsior list individuals not eligible to vote" and "packed and otherwise manipulated the unit in order to dilute SEIU 1199's strength and thwart an SEIU 1199 victory in the election." App. at 88. The Employer objected on the grounds that the void ballot should have been counted for Local 300S and that the observer for 1199 SEIU "had an unauthorized election voter list that was visible to workers and they had to wait for 1199 'clearance' before voting." App. at 89.[4] The Board's Acting Regional Director conducted a preliminary investigation of the ballots and objections and determined that a hearing was necessary.[5]

An administrative law judge ("ALJ") conducted the hearing, at which the parties stipulated that four of the challenged ballots should be counted and eight of the challenged ballots should remain unopened and not counted. Challenges remained as to

---

[3] Local 300S also filed an objection "due to the fact that the administration terminated a Local 300-S supporter during the election, of which we feel had a direct impact on the result of this election." App. at 18.

[4] Regency did not provide evidentiary support for its two other objections, which were accordingly overruled.

[5] The Acting Regional Director consolidated the representation case with an unfair labor practice case for the purposes of the hearing. The unfair labor practice portion of the case was later severed from the representation proceeding and reviewed by this court in *Regency III*.

the ballots of thirty-one individuals. The ALJ determined that the Employer hired sixty-one employees between January 1 and March 31, 2008, and that forty of those employees had been hired between March 1 and March 5. He also determined that 1199 SEIU's election representative brought a two-to-three-page list of voters he intended to challenge to the election, and that he compared names of voters to this list throughout the election. Finally, the ALJ concluded that the intent of the voter who cast the void ballot was "unambiguously expressed as a preference for Local 300S." App. at 34.

The ALJ thus concluded that "[Regency's] hiring wave came during the month prior to the election and was extremely atypical of [Regency's] historical hiring practices," and that this scenario was "a classic case of unlawfully packing the bargaining unit." App. at 34. He determined that only one of the newly hired employees performed work in his designated department and found that only his challenged ballot should have been counted.[6] He also concluded that Regency's objection as to the void ballot was meritorious because the voter had clearly indicated a preference for Local 300S. Finally, the ALJ found that 1199 SEIU's use of a voter challenge list was not improper and recommended that Regency's objection related to the list be overruled. Because the ballots of the challenged individuals whose votes should have been counted were insufficient to be determinative of the outcome of the election, the ALJ recommended that

---

[6] 1199 SEIU withdrew its election objections because they were subsumed by its ballot challenges.

the results remain unchanged.

On September 3, 2009, a two-member panel of the Board issued a Decision, Order, and Certification of Representative, affirming the ALJ's findings and conclusions and adopting the recommended order,[7] which thus certified 1199 SEIU as the exclusive collective-bargaining representative of the employees at the Dover facility. The Employer appealed that decision to the United States Court of Appeals for the District of Columbia Circuit and the General Counsel filed a cross-application for enforcement. On June 17, 2010, the United States Supreme Court issued its decision in *New Process Steel, L.P. v. NLRB*, pursuant to which a panel of two Board members cannot constitute a valid Board quorum unless at the time of panel decision there were in office at least three members. 130 S. Ct. 2635, 2644 (2010). Accordingly, the Board issued an order setting aside the September 3, 2009 Decision and Order.

Meanwhile, 1199 SEIU requested that the Employer recognize and bargain with it by letter dated January 5, 2010, to which the Employer did not respond. 1199 SEIU filed an unfair labor practice charge against the Employer, and the Board's Regional Director issued the unfair labor practice complaint. The Employer admitted its refusal to bargain with 1199 SEIU but denied that it had an obligation to do so. The General Counsel filed a motion for summary judgment. In its response, the Employer moved for the recusal of

---

[7] The two-member panel made minor modifications to the ALJ's order that are not material to this case.

Board Member Becker.[8]  The *New Process Steel* decision was issued before a decision was reached on the summary judgment motion.

1199 SEIU was again certified as the exclusive collective-bargaining representative of the employees at the Dover facility by a three-member panel of the Board, which accepted the ALJ's rulings and findings, and incorporated by reference the decision reached earlier by the two-member panel.  The three-member panel also denied the Employer's motion requesting, *inter alia*, that Member Becker recuse himself.

Once again the Employer refused to recognize and bargain with 1199 SEIU. The Acting General Counsel filed an amended complaint and a Supplemental Memorandum in Support of Motion for Summary Judgment.

On April 28, 2011, the Board issued a Decision and Order, in which it found that Regency's failure and refusal to recognize and bargain with 1199 SEIU qualified as engaging in unfair labor practices affecting commerce within the meaning of Section 8(a)(5) and (1) of the Act.  On May 13, 2011, the Board filed this application to enforce that Decision and Order.

## II.

### Standard of Review

On appeal, "[t]he findings of the Board with respect to questions of fact if

___

[8] Regency sought Member Becker's recusal because he had worked with the Service Employees International Union ("SEIU") prior to his appointment to the Board.

supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). "If the Board adopts a rule that is rational and consistent with the Act, then the rule is entitled to deference from the courts [and] … if the Board's application of such a rational rule is supported by substantial evidence on the record, courts should enforce the Board's order." *Bro-Tech Corp. v. NLRB*, 105 F.3d 890, 894 (3d Cir. 1997). This court will not reverse credibility determinations "unless inherently incredible or patently unreasonable." *St. George Warehouse, Inc. v. NLRB*, 420 F.3d 294, 298 (3d Cir. 2005).

## III.

## Analysis

We must decide whether the Board properly found that Regency violated Section 8(a)(5) and (1) of the Act by refusing to bargain with 1199 SEIU. 29 U.S.C. § 159(d) (upon petition for enforcement, the court must decide whether to enforce, modify, or set aside in whole or in part the order of the Board). The determinative issue is whether the Board's certification of 1199 SEIU as the employees' duly elected collective bargaining representative in the underlying representation proceeding was proper, thus giving the Employer the duty to bargain with 1199 SEIU.[9]

---

[9] Regency argues that it was improper for the Board to issue a union certification without remanding the case to the Regional Director. The Board reasonably found that remand was unnecessary because it has authority to issue such a certification itself under Section 102.69 of the Board's rules. *See* App. at 25 n.11 (citing National Labor Relations Board Rules and Regulations, Sec. 102.69(f)). Therefore, this argument is without merit.

8

The Employer argues that 1199 SEIU's maintenance of another election list invalidates the election, and asks that the union's challenges to the voters' ballots be overruled.[10]

## A. The Challenge List

There is substantial evidence to support the Board's conclusion that 1199 SEIU's representative used a challenge list during the election only to keep track of individuals whom 1199 SEIU intended to challenge. *See* 29 U.S.C. § 160(e). Moreover, the Board's allowance of the use of such a list for this purpose is "rational and consistent with the Act," so it is entitled to deference from this court. *Bro-Tech Corp.*, 105 F.3d at 894; *see also In re Mead Coated Board, Inc.*, 337 N.L.R.B. 497, 498 (2002) (explaining that a challenge list accommodates the policy of protecting employees and the policy of preserving the rights of the parties). Accordingly, Regency's argument that the Board's order cannot be enforced because of the 1199 SEIU representative's use of the challenge list fails.

## B. Ballot Challenges

The Employer also argues that the challenged ballots should be counted. The rule that an employer may not hire new employees to pack the relevant unit and dilute a union's strength is rational and consistent with the NLRA. *See Bro-Tech Corp.*, 105 F.3d

---

[10] Regency also argues that Member Becker's refusal to recuse himself makes the April 28, 2011 order unenforceable. We reject this argument for the reasons explained in

at 894. Moreover, the Board's decision to adopt the ALJ's finding that the Employer unlawfully packed the bargaining unit was supported by substantial evidence. The record supports the conclusion that many of the newly hired employees whose ballots were challenged submitted incomplete information on their employment applications, which reasonably led to the ALJ's conclusion that the "hiring was rushed in order to augment existing staff and be included in the bargaining unit." App. at 28. We will also uphold the decision to credit the testimony of employees who stated that the newly hired employees never performed any work at the Dover facility, because the testimony was not "inherently incredible or patently unreasonable." *St. George Warehouse, Inc.*, 420 F.3d at 298. Additionally, the record supports the conclusion that the newly hired employees worked substantially fewer hours than previously hired part-time workers had worked and that many of their names did not appear on their department's work schedules. The reasoning behind the Board's conclusion that the Employer unlawfully packed the bargaining unit with these new hires is thus supported by substantial evidence.

## IV.

### Conclusion

For the foregoing reasons, we will enforce the order of the Board.

---

*Regency II*, 2011 WL 3488995, at *4, and *Regency III*, 441 F. App'x at 954.